OPINION
{¶ 1} On November 23, 2001, appellee, the Licking County Department of Job and Family Services, filed a complaint alleging Zachary Fazio, born November 21, 2001, to be a dependent child. Mother of the child is appellant, Erica Fazio. Appellant functions in the lower moderate range of mental retardation. The child was placed in foster care immediately following his release from the hospital.
 {¶ 2} The original complaint was dismissed and a second complaint was filed on February 8, 2002. An adjudication and dispositional hearing was held before a magistrate on April 24, 2002. By decision filed May 8, 2002, the magistrate found the child to be a dependent child and placed him in the permanent custody of appellee. By judgment entry filed May 8, 2002, the trial court approved and adopted the magistrate's decision.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR PSYCHIATRIC EVALUATION WITH AN INDEPENDENT PSYCHIATRIST, HOWARD SOKOLOV, M.D."
 II {¶ 5} "THE TRIAL COURT'S ORDER GRANTING PERMANENT CUSTODY TO THE AGENCY IS CONTRARY TO LAW AND AGAINST THE WEIGHT OF THE EVIDENCE."
 I {¶ 6} Appellant claims the trial court erred in denying her request for an independent psychiatric evaluation. We disagree.
 {¶ 7} Pursuant to Juv.R. 32(A), trial courts are given discretion in ordering mental examinations. In order to find an that abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 8} On March 4, 2002, appellant filed a motion for psychiatric evaluation pursuant to Juv.R. 32(A)(3), but requested a specific physician, Howard Sokolov, M.D., to be paid at state's cost. The state had previously requested a psychological evaluation and a psychiatric examination pursuant to Juv.R. 32(A)(3) on February 8, 2001. The motion was granted by judgment entry filed February 13, 2002, with the notation "[t]he psychological evaluation shall be completed by Dr. Jackson. The parties shall work together to determine which psychiatrist shall complete the psychiatric evaluation."
 {¶ 9} In her March 4, 2002 request, appellant predicated her request on the fact that the psychiatric evaluator named by the trial court, Patricia Forman, M.D., has been seeing appellant for treatment purposes and "has formed conclusions and opinions with respect to the natural mother." Appellant's request was denied on April 2, 2002.
 {¶ 10} Because Juv.R. 32(A) gives the trial court wide latitude in determining the need for a psychiatric examination, it is hard to find any error in the trial court's decision in denying a second examination based upon appellant's belief that the named physician had too much prior experience with her, thereby having preconceived conclusions and opinions.
 {¶ 11} Upon review, we find no abuse of discretion by the trial court in denying a second mental examination.
 {¶ 12} Assignment of Error I is denied.
 II {¶ 13} Appellant claims the trial court's decision was contrary to law and against the manifest weight of the evidence. We disagree.
 {¶ 14} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 15} R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:
 {¶ 16} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 17} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
 {¶ 18} "(16) Any other factor the court considers relevant."
 {¶ 19} R.C. 2151.414(B) enables the trial court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child, including "[t]he child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency." R.C. 2151.414(D)(4).
 {¶ 20} Appellant's brief advances the theory that appellee was intent on adoption and did not consider reunification of appellant and child. However, appellant admits she was offered weekly visitation with the child and had an opportunity to bond with the child. Appellant's Brief at 11. The case plan lists the "Child's Permanency Goal" as "Reunification/Adoption." See, State's Exhibit 5.
 {¶ 21} The April 5, 2002 report of the child's guardian ad litem, William Seward, indicates appellant functions at a nine year old level, has schizophrenia, has heard "voices telling her to kill herself and the baby and had formed a plan to accomplish this by jumping off a bridge," is "challenged to take adequate care of herself, let alone a child," is unable to maintain stable housing and her sole source of income is her disability benefits.
 {¶ 22} Kathleen Klingensmith, an intake social worker assigned to appellant, visited appellant's apartment during her pregnancy. T. at 26-27. Ms. Klingensmith observed two people sleeping on the couch in the apartment. Appellant knew one of the individuals, but not the other. T. at 27-28. Appellant was resistant to following her medication regime. T. at 30-31. Hygiene was a concern and at the time of delivery, appellant had lice. T. at 32, 43. During appellant's first visit with the child, she shook her fist in front of him trying to wake him, and seemed unable to properly hold him. T. at 45. During subsequent visits with the child, appellant's parenting skills were "very minimal." T. at 47. Ms. Klingensmith opined appellant could not function as a parent unassisted and "even with assistance, it was at very high risk." T. at 48-49.
 {¶ 23} During an in camera interview by the trial court, appellant mentioned the medications she was taking and repeatedly indicated "I just want my son home." T. at 70, 72.
 {¶ 24} Jennifer Koning, an ongoing social worker assigned to appellant's case, testified her concerns with the case included the need for one-on-one assistance for basic parenting skills, housing, mental health issues, financial issues, and hygiene. T. at 79-80. Appellant's visits with the child were strained and appellant became easily frustrated. T. at 81, 83. At one point, appellant's frustration lead to her smacking the child. T. at 84. Appellant was unable to handle the child's crying, and responded by walking out of the room. T. at 86-88. Although appellant was given parenting instructions, she was unable to follow through with them. T. at 90-94. Appellant appeared to be uncomfortable with the child. T. at 92. Ms. Koning opined there were no other options regarding parenting skills available to appellant through appellee. T. at 95.
 {¶ 25} Appellant lives in her mother's residence and has not made any plans for herself and the child. T. at 95, 97. Appellant was hospitalized at Shepherd Hill in March of 2002 and generally fails to follow through on her appointments with her various service providers, including her psychiatrist. T. at 99, 101-102.
 {¶ 26} The child appears to be normal and suitable for adoption. T. at 104-105, 107.
 {¶ 27} Upon review, we find clear and convincing evidence to support the trial court's decision. The trial court did not err in granting permanent custody of the child to appellee.
 {¶ 28} Assignment of Error II is denied.
 {¶ 29} The judgment of the Court of Common Pleas of Licking County, Ohio, Juvenile Division is hereby affirmed.
By Farmer, J., Hoffman, P.J. and Wise, J. concur.
topic: permanent custody — mother suffers from moderate level retardation.